886 F.2d 1338
 281 U.S.App.D.C. 38
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
TARPON GAS MARKETING LTD., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 88-1586.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 12, 1989.
 
 Before WALD, Chief Judge, and D.H. GINSBURG and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on petition for review of orders of the Federal Energy Regulatory Commission. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review of orders of the Federal Energy Regulatory Commission be denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner Tarpon Gas Marketing Ltd. ("Tarpon") challenges the Federal Energy Regulatory Commission's ("FERC") decision to authorize Midwestern Gas Transmission Company ("Midwestern") to abandon 50,000 Mcf per day of firm gas sales to ANR Pipeline Co. ("ANR"), to provide 50,000 Mcf per day of firm transportation service (and 111,000 Mcf per day of interruptible transportation service) to Minnegasco, Inc. ("Minnegasco"), and to build a pipeline to transport the gas.[1] Tarpon claims that the transaction as approved is unduly discriminatory. Because we find that FERC's decision to approve this transaction was not arbitrary and capricious, we affirm the orders. See Maryland People's Counsel v. FERC, 761 F.2d 768, 774 (D.C.Cir.1985); 5 U.S.C. Sec. 706(2)(A).
 
 I. BACKGROUND
 A. The Transaction Under Review
 
 5
 In September 1986, Minnegasco agreed to purchase a specified volume of gas over a ten-year period from TransCanada Pipelines Ltd. ("TransCanada").[2] As the interstate pipeline physically closest to Minnegasco, Midwestern was the most promising alternative delivery system to link Minnegasco with TransCanada. Since Midwestern's firm capacity was fully committed at the time, Minnegasco negotiated with one of Midwestern's existing customers, ANR, to release a portion of its firm capacity on Midwestern. At the time, Midwestern purchased gas from TransCanada for resale to ANR under an arrangement whereby ANR assumed all of the take-or-pay liability.[3] Therefore, before ANR could relinquish some of its firm capacity, it needed assurance that it would not continue to be responsible for the relinquished capacity on a take or pay basis. Given the practicality of this somewhat unusual take-or-pay arrangement, Midwestern agreed to reduce ANR's contract demand, and TransCanada agreed to reduce Midwestern's obligation for a comparable amount.
 
 
 6
 In December 1986, with these agreements in place, Midwestern sought FERC approval under Section 7 of the Natural Gas Act.[4] A number of parties raised concerns about discriminatory access to Midwestern's pipeline system. FERC ordered a technical conference during which these concerns were addressed. Midwestern Gas Transmission Company, 42 F.E.R.C. p 61,035 (Jan. 21, 1988).[5]
 
 
 7
 Tarpon intervened after the technical conference had been held. It contended that Midwestern's application presented serious questions of undue discrimination. In particular, Tarpon argued that Midwestern agreed to release some of its firm capacity only because Minnegasco could offer it relief from its take-or-pay liabilities. Tarpon asked that Midwestern, instead, be required to offer any abandoned pipeline capacity to all potential shippers on a nondiscriminatory basis.
 
 B. FERC's Order
 
 8
 FERC approved Midwestern's abandonment of gas sales to ANR and issued a certificate of public convenience and necessity for the Midwestern-Minnegasco transportation arrangement. Midwestern Gas Transmission Co., 43 F.E.R.C. p 61,065 (April 13, 1988). As a result of concerns raised about potential discrimination by Midwestern, it attached several conditions to the certificate. FERC required Midwestern (1) to provide firm and interruptible transportation services on its northern system on a nondiscriminatory basis in the future; and, (2) to maintain a log of transportation requests and their disposition.[6] The Commission further conditioned the certificate so as to ensure that ANR's take-or-pay liability would be reduced commensurate with ANR's 50,000 Mcf per day reduction of purchases from Midwestern. 43 F.E.R.C. p 61,065, at 61,177. FERC limited the term of service for the interruptible transportation to the earlier of one year or until Midwestern accepts a blanket transportation certificate, and authorized the firm transportation service for an unlimited term.
 
 
 9
 On rehearing, Tarpon reasserted its undue discrimination claims and sought to have the Sec. 7(c) certificate vacated, leaving the abandonment authority in place. In the alternative, Tarpon urged FERC to add additional conditions to the certificate to give other shippers a meaningful opportunity to obtain nondiscriminatory access to Midwestern's system.
 
 
 10
 After consideration on rehearing, FERC essentially reaffirmed its April 13 order, with certain minor clarifications.[7] We conclude that FERC acted reasonably in approving Midwestern's application and in conditioning it to ensure against nondiscrimination in the future.
 
 II. DISCUSSION
 A. Nondiscriminatory Nature of Transaction
 
 11
 This case involves an application for an individual certificate under Section 7 of the Natural Gas Act, 15 U.S.C. Sec. 717f(c), and therefore, despite Tarpon's contentions, does not require us to examine the broader issues that have arisen "against the backdrop of Order No. 436." Brief for Petitioner at 3. Certainly, undue discrimination is no more acceptable under individual section 7(c) applications than under self-implementing transportation authority. Texas Gas Transmission Corp., 34 F.E.R.C. p 61,203, at 61,341 (Feb. 14, 1986). Nevertheless, the Commission has reserved its power to evaluate potential discriminatory effects of an individual Section 7 certificate application "on a case-by-case basis at the time such certificates are sought." Order No. 436, 50 Fed.Reg. 42,408, at 42,426 (1985); ANR Pipeline Co. v. FERC, 876 F.2d 124, 128 (D.C.Cir.1989).
 
 
 12
 In this case, FERC confronted allegations that Midwestern was unduly discriminating against those who sought access to its pipeline, but who could not offer Midwestern relief from its take-or-pay obligations. FERC found insufficient evidence that Midwestern had engaged in discriminatory conduct in becoming involved in the Minnegasco deal. Nevertheless, in keeping with its proactive stance on advancing procompetitive goals and in response to the objections raised by Tarpon, FERC placed conditions on the certificate to facilitate monitoring of Midwestern's access decisions in the future. See Lone Star Gas Co., 47 F.E.R.C. p 61,376 (June 5, 1989).
 
 
 13
 Upon examination of the relevant facts before FERC, we conclude that it drew a rational connection between those facts and its decision. Associated Gas Distributors v. FERC, 824 F.2d 981, 1016 (D.C.Cir.1987); see also Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 844-45 (1984). In its challenge to Midwestern's application, Tarpon stated that it had sought capacity on Midwestern itself, and that Wisconsin Public Service ("WPS") and Wisconsin Power and Light ("WPL") originally intervened to protest the application because they too had attempted, in vain, to obtain capacity on Midwestern's line. Nevertheless, nothing in the record indicates that either WPL or WPS ever presented a specific package to Midwestern that was refused because they had not offered take-or-pay relief to Midwestern. The only additional evidence Tarpon supplied to FERC regarding discrimination was a statement that it, and perhaps others, had attempted to obtain service on Midwestern and had been denied. "Motion of Tarpon Gas Marketing Ltd. For Leave To Intervene Out-of-time and Request for Hearing," Midwestern Gas Transmission Co., (March 7, 1988), J.A. at 89, 94.
 
 
 14
 FERC reasonably concluded that Midwestern itself did not impose the take-or-pay reduction as a precondition to this transportation arrangement. Midwestern had not stood at the gateway and denied access to its pipeline to all but Minnegasco, just because Minnegasco could relieve Midwestern's take-or-pay responsibilities. In fact, it appears from this record that Midwestern had no take-or-pay liability; ANR's liability was at issue. And, the Commission itself tried to ensure that ANR would not be over-burdened by this transaction by conditioning the certificate to relieve it of its commensurate liability.
 
 
 15
 Here, Minnegasco aggressively pursued a complicated arrangement that dealt with the reality of the take-or-pay obligation. Under FERC's encouragement to diversify its gas supplies, it went out and put together a deal that satisfied all parties, and was a step toward implementing FERC's goals of increasing competitiveness.
 
 
 16
 B. FERC's Decision to Grant an Unlimited Term Certificate
 
 
 17
 Midwestern applied for authorization to provide firm transportation service to Minnegasco for a ten year period. FERC ordered that the service be "authorized for an unlimited term." 43 F.E.R.C. p 61,065, at 61,180. Although Tarpon argued on brief that FERC erred in its decision to veer from its policy of limiting individual certificates to one year, it failed to raise this issue in its application for rehearing before the Commission, and there appears to be no reasonable grounds for its failure to do so. The only party to challenge the firm certificate term on rehearing was Independent Producers' Association of America ("IPAA"), Petitioner in the consolidated case, No. 88-1601. IPAA, incorrectly, challenged the granting of a 10-year term, when FERC had, in fact, granted an unlimited term. In any event, IPAA was not a party in this proceeding, as it failed to file its brief in a timely fashion. Tarpon Gas Marketing Ltd. v. FERC, No. 88-1586 and 88-1601 (D.C.Cir.1989) (per curiam order denying motion of IPAA to intervene, or in the alternative, for leave to accept brief out of time). Under Section 19 of the Natural Gas Act, the court is without jurisdiction to review any aspect of the Commission's order that is not urged before the Commission in the application for rehearing. 15 U.S.C. Sec. 717r(b). The party raising the issue on appeal must be the party who urged its reconsideration on rehearing. Asarco, Inc. v. FERC, 777 F.2d 764, 773 (D.C.Cir.1985). The provisions of Sec. 19 "cannot be rationalized on a theory that all is well so long as the agency has had an opportunity to address the point." Id. at 773-74; see also New Jersey Zinc Co. v. FERC, 843 F.2d 1497, 1503 (D.C.Cir.1988).
 
 
 18
 C. FERC's Rejection of the alternative conditions proposed by Tarpon.
 
 
 19
 FERC has broad authority to attach conditions to the issuance of a certificate that the public convenience and necessity may require. Tennessee Gas Pipeline Co. v. FERC, 689 F.2d 212, 214 (D.C.Cir.1982). Under that authority, FERC will scrutinize individual section 7 certificates and attach those conditions necessary to prevent against undue discrimination. See, e.g., Great Lakes Gas Transmission Co., 44 F.E.R.C. p 61,359 (Sept. 21, 1988). In this case, FERC did this, and attached several conditions that would facilitate FERC's ability to monitor and prevent discrimination by Midwestern in the future. Nevertheless, Tarpon contends that two additional conditions were required to mitigate the discriminatory effect of the transaction as approved.
 
 
 20
 First, Tarpon argued that FERC should have imposed a contract conversion condition on the certificate that would require Midwestern to offer existing sales customers the right to convert their sales entitlements to firm transportation service. Tarpon based this request on FERC's statement in Order No. 436 that the conversion option was "essential if the goal of non-discriminatory access to transportation is to be achieved." Order No. 436, 50 Fed.Reg. at 42438 (1985). While that may be true where a pipeline seeks a blanket certificate under Order No. 436, that does not mean that it is required in every individual section 7 certificate. In its order after rehearing, FERC concluded that since no finding of discrimination against Midwestern has been made, "[w]e have no basis to conclude that Midwestern will not comply with its stated intention to provide nondiscriminatory transportation services for any shipper who requests such service." Midwestern Gas Transmission Co., 43 F.E.R.C. p 61,475, at 62,170 (June 16, 1988). And, we have no basis to conclude otherwise.
 
 
 21
 In the alternative, Tarpon contends that rate conditions must be placed on Midwestern's interruptible transportation service to reduce the bias that excessive interruptible transportation rates will otherwise inject in favor of Midwestern's sales customers. "Application of Tarpon Gas Marketing, Ltd. for Rehearing or, in the alternative, for Clarification," Midwestern Gas Transmission Co., (May 11, 1988), J.A. at 133. FERC essentially deferred these issues to a pending rate proceeding for Midwestern (Docket No. RP86-33-001) as the more appropriate forum. FERC's decision not to attach these two conditions to the certificate is supported by the record, is consistent with this court's decision in Northern Natural Gas Co. v. FERC, 827 F.2d 779 (D.C.Cir.1987), and should not be disturbed on appeal.
 
 
 
 [1]
 The following FERC orders are under review: (1) Midwestern Gas Transmission Company, 43 FERC p 61,065 (April 13, 1988); and (2) Midwestern Gas Transmission Company, 43 FERC p 61,475 (June 16, 1988)
 
 
 [2]
 ERA authorization for the importation of gas from TransCanada to Minnegasco was granted in a separate proceeding, see Minnegasco, Inc., DOE/ERA Opinion and Order No. 191, 1 ERA 70,721, reh'g denied, DOE/ERA Opinion and Order No. 191-A, 1 ERA p 70,738 (1987), app. pending sub nom Independent Petroleum Ass'n of America v. ERA, No. 88-1298 (D.C.Cir.)
 
 
 [3]
 See Midwestern Gas Transmission Co., 28 F.E.R.C. p 61,336, at 61,616 (Sept. 12, 1984)
 
 
 [4]
 See 15 U.S.C. Sec. 717f(c) and 15 U.S.C. Sec. 717f(b)
 
 
 [5]
 Commissioner Stalon dissented in part from the Order Convening the Technical Conference because of his belief that the matter should have been set for an evidentiary hearing. Midwestern Gas Transmission Co., 42 F.E.R.C. p 61,035 (Jan. 21, 1988) (Stalon, Commissioner, dissenting in part). No hearing was ever held, and that decision was not challenged on appeal. Subsequently, Midwestern agreed to seek authorization to provide transportation services to the objecting parties
 
 
 [6]
 The Commission also conditioned the certificate on Midwestern's eliminating its proposed "minimum commodity bill" because Midwestern did not show good cause for a guaranteed return on equity and because such an approach is incompatible with Midwestern's method for rate design. This condition is not at issue in this appeal
 
 
 [7]
 At Tarpon's request, FERC clarified the nondiscriminatory access condition: "Midwestern may not condition future access on a customer's obtaining take-or-pay relief without running afoul of the nondiscriminatory access condition included in the April 13 order." 43 F.E.R.C. p 61,475, at 62,171